472 So.2d 901 (1985)
Louis RUDOLPH, Jr., Jerry Rudolph, David Rudolph, Linda Rudolph, Sharon Rudolph, Floyd Rudolph, Larry Rudolph, Carl Rudolph and Pauline Rudolph Robinson, Individually and as Natural Tutrix of Billy Robinson and Rhonda Robinson
v.
MASSACHUSETTS BAY INSURANCE CO.
No. 85-CA-0253.
Supreme Court of Louisiana.
June 28, 1985.
*902 Pamela C. Walker, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, for third party-appellant.
Edward J. Walters, Jr., James E. Moore, Moore & Walters, Baton Rouge, Gregory J. Laborde, Andrew H. Meyers, Preis, Kraft, Laborde & Daigle, Lafayette, F. Barry Marionneaux, Plaquemine, for appellees.
CALOGERO, Justice.
Louisiana Revised Statutes, Title 13, Section 5105 prohibits trial by jury in any lawsuit against the state, a state agency, or political subdivision.[1] In this civil litigation arising out of an automobile accident, and in which the City of Plaquemine is involved as a third party defendant,[2] the trial judge declared this statute unconstitutional for the reason that it violates the United States Constitution's seventh amendment right to civil trial by jury[3] and its fourteenth amendment rights to due process of law and equal protection.[4]
The ruling was incorrect and is herein reversed. The United States Supreme Court whose authority with respect to, and interpretation of, the United States Constitution is preeminent, has already decided that the right to jury trials in civil cases is not so fundamental to the American system of justice as to be required of state courts by the due process clause of the fourteenth amendment. Melancon v. McKeithen, 345 F.Supp. 1025, 1035 (E.D. La.1972) aff'd 409 U.S. 943, 93 S.Ct. 289, 34 *903 L.Ed.2d 214 (1973).[5] The Bill of Rights, which includes the seventh amendment right to jury trial, is directly applicable only to the federal government. The rights become applicable to the states when the United States Supreme Court, through a process of "selective" incorporation,[6] determines that each is required by the fourteenth amendment's guarantee of due process. Thus, whether the right to a civil jury trial must be afforded to its citizens by the state, at least insofar as mandated by the United States Constitution, is dependent on whether the United States Supreme Court considers the civil jury trial an essential aspect of due process. And, the seventh amendment is one of the few rights contained in the Bill of Rights which has not been made applicable to the states.[7] In addition to the decision in Melancon v. McKeithen, cited above, other cases which have refused to incorporate in the due process clause of the fourteenth amendment the right of trial by jury in civil matters include: Edwards v. Elliot, 21 Wall. 532, 88 U.S. 532, 22 L.Ed. 487 (1874); Walker v. Sauvinet, 2 Otto 91, 92 U.S. 90, 23 L.Ed. 678 (1876); Minneapolis & St. Louis R.R. Co. v. Bombolis, 241 U.S. 211, 36 S.Ct. 595, 60 L.Ed. 961 (1916); Wagner Elec. Mfg. Co. v. Lyndon, 262 U.S. 226, 43 S.Ct. 589, 67 L.Ed. 961 (1923); Missouri v. North, 271 U.S. 40, 46 S.Ct. 384, 70 L.Ed. 818 (1926); Hardware Dealers v. Glidden, 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 (1931); Palko v. Conn., 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Alexander v. Va., 413 U.S. 836, 93 S.Ct. 2803, 37 L.Ed.2d 993 *904 (1973). Despite this petitioner's contention that the Court's reasoning in the above listed cases is outdated, the fact is that its position has been reaffirmed as recently as 1973. We are not persuaded to decide the case at variance with this long and consistent line of decisions.
Since we do not believe that the petitioner's equal protection argument has been as directly addressed by the United States Supreme Court, we will consider this contention in the remainder of our opinion. However, our conclusion that the denial of trial by jury in this situation does not violate equal protection guaranteed under the United States Constitution does find some support, in fact, from a recent action of the United States Supreme Court. Gianechini v. City of New Orleans, 410 So.2d 292 (La.App.), writ denied 412 So.2d 1109 (La. 1982), appeal dismissed, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982).

Equal Protection
The fourteenth amendment of the United States Constitution provides:
... nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
The United States Supreme Court has acknowledged the legislative right to classify. To balance the demand for equality of the laws, guaranteed in the fourteenth amendment, and the legislative right to classify, which necessarily affords different treatment for the individuals so classified, the Court scrutinizes the classification on the basis of its reasonableness. J. Tussman and J. tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341, 344 (1949).
The function then of the equal protection clause, is to measure the validity of classifications created by state laws. Parham v. Hughes, 441 U.S. 347, 358, 99 S.Ct. 1742, 1749, 60 L.Ed.2d 269 (1979). To accomplish this task, the federal courts have employed a two-stage process. Initially, it is necessary to determine whether there is a suspect class disadvantaged by the subject acta class such as alienage, race, or ancestryor a fundamental rightsuch as a right of a uniquely private nature, the right to vote, the right of interstate travel, and the rights guaranteed by the first amendment. If so, strict scrutiny of the offending state act is required. Mass. Board of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Under this approach, the legislation must be necessary to promote a compelling state interest. Other classifications are tested on a less rigorous basis, depending on the character of the classification involved and the strength of the state interest supporting the distinction. Generally, the less rigorous standards of review are "rational basis," which asks whether the legislation which creates the classification is rationally related to a legitimate state interest, and "means" or heightened scrutiny, which asks whether the legislation is substantially related to an important governmental objective.[8] A rational basis level of review will rarely render an act constitutionally infirm and is by design a deferential approach to the legislative branch of government.
To assess the right to jury trial in terms of the federal equal protection guarantee, it is first necessary to determine whether the right to jury trial in civil actions is a fundamental right under federal standards. The right has of course received constitutional sanction in the seventh amendment. Yet, the United States Supreme Court has *905 not found it so fundamental as to require its incorporation as an essential aspect of due process in the fourteenth amendment guarantee applicable to the states.
Furthermore, the classification of plaintiffs injured by governmental tortfeasors has never been deemed the sort of suspect or quasi-suspect category which would require the courts' heightened review. We must therefore examine the classification only in terms of its reasonableness or rational relationship to a legitimate governmental interest. Put another way, the crucial question in equal protection cases becomes "whether there is an appropriate governmental interest suitably furthered by the differential treatment." Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 2290, 33 L.Ed.2d 212 (1972). There can be little argument that the state has a legitimate interest in preserving its financial resources (which the Legislature apparently feels are jeopardized because of a jury's perceived inclination to dig deeper into state pockets) and in minimizing the delays and greater court costs which generally attend jury trials. Having enunciated a legitimate objective, the state need not prove that "in fact the act will promote (the legislature's objective) [but] the Equal Protection clause is satisfied by our conclusion that the Legislature could rationally have decided that (it) ... might...." Minn. v. Clover Leaf Creamery, 449 U.S. 456, 466, 101 S.Ct. 715, 725, 66 L.Ed.2d 659 (1981). We conclude that the Legislature could have rationally believed that this classification of tort victims, who cannot require a jury trial, is related to achieving the legitimate state objectives of the protection of the state treasury and the facilitation of the judicial process. Thus, La.Rev.Stat.Ann. § 13:5105 does not violate the equal protection clause of the United States Constitution. Our conclusion here, we believe, is supported by the recent federal action in Gianechini v. City of New Orleans, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 40 (1982). In that case, the United States Supreme Court dismissed an appeal "for want of a substantial federal question" which had asked that La. Rev.Stat.Ann. § 13:5105, the very statute under consideration here, be declared in violation of the equal protection provision of the United States Constitution.

Decree
For the foregoing reasons we determine that La.Rev.Stat.Ann. § 13:5105 is not in violation of the United States constitution's seventh amendment (right to civil trial by jury) and its fourteenth amendment due process and equal protection clauses. The judgment of the district court which has concluded to the contrary is therefore reversed. The City of Plaquemine's motion to strike the jury trial is granted.
REVERSED; MOTION TO STRIKE JURY TRIAL GRANTED.
CALOGERO, J., assigns additional concurring reasons.
LEMMON, J., dissents on the equal protection issue.
CALOGERO, Justice, concurring.
Arguably, we need not reach the equal protection analysis which appears in the majority opinion under the subtitle "Equal Protection." It should not be necessary to decide whether legislation discriminates impermissibly against a class when the outset question is not answered appropriately, that is, is the class complaining even being discriminated against?
Appellees contend that they have been denied equal protection of the law because the class in which they fall, all claimants with tort claims against the sovereign, are discriminated against in relation to another class of claimants, that is, those with tort suits against non-governmental defendants. The latter are allowed civil jury trials, while the former are not. The fallacy in this argument is caused by focusing on the class following the operative incidents which gives rise to the respective sets of claims. The law does not require equal treatment of all suit claimants in all circumstances. It merely requires equal application in similar circumstances.
*906 The appropriate focus is on the class as it exists before the tort claims arise. In that posture it is clear that claimants are being treated equally. All persons are afforded the identical rights in Louisiana, and that is, should they be injured by a governmental tortfeasor they are denied civil jury trials, while if they are injured by non-governmental tortfeasors they are allowed civil jury trials.
That is not to say that disparate treatment of classes of defendants is impervious to equal protection attack. In that event, however, the party denied equal protection is the defendant who shows that he and his class, vis a vis another similarly situated class, has been discriminated against, or denied equal treatment. In this case that complainant would be one or the other of the two classes of defendants being differently treated.
NOTES
[1] La.Rev.Stat.Ann. § 13:5105 (West Supp.1985) provides:

No suit against the state or state agency or political subdivision shall be tried by jury.
[2] On June 4, 1983, Louis Rudolph, Sr. was killed in an automobile accident on Louisiana Highway 77. Earlier on that date, David Samson, a minor, and three other minors had purchased beer from two convenience stores, which violated the provisions of La.Rev.Stat.Ann. § 14:91 by selling any alcoholic beverage to the minors. Apparently intoxicated, the minors were stopped by officers of the Plaquemine City Police Department, who did not detain them but instead directed them to go home immediately. Subsequently, the vehicle of these minors and the Rudolph vehicle were involved in a fatal collision.

The heirs of Louis Rudolph brought suit for damages which resulted from this accident against the owners of the convenience stores, their insurers, and the Louisiana Department of Transportation and Development. Separate personal injury actions were also brought by David Samson and Shannon Fairchild, a passenger in the Samson vehicle, who alleged injuries in the accident. The three suits were consolidated, and the City of Plaquemine was made a party to the litigation when Earle Blanchard, the owner of the Hop N Shop # 3 convenience store, filed a third party demand. In that demand a jury was requested, but the City filed a motion to strike the request in this instance. When the City was named as an additional party defendant in each of the consolidated actions by an amended petition seeking jury trial, the City again filed motions to strike.
[3] The seventh amendment to the United States Constitution provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.
[4] The fourteenth amendment of the United States Constitution provides in pertinent part:

... nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[5] This case originated in the United States District Court, Eastern District of Louisiana, before a three judge panel, as provided by 28 U.S.C. § 2281, a provision subsequently repealed on August 12, 1976. In an exhaustive opinion, the district court ruled in favor of the defendants and refused to enjoin the use of Louisiana civil procedures which give appellate courts the right of unlimited review of both questions of fact and law in civil cases. The decision was appealed directly to the United States Supreme Court under 27 U.S.C. § 1253, which affirmed the judgment without reasons. Although the denial of writs has been found to impart no expression of opinion by the Supreme Court on the merits of a case, an affirmance on appeal is a determination that the court below has decided a case correctly.
[6] Palko v. Conn., 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937).
[7] The provisions of the first amendment have been held applicable to the states. Cantwell v. Conn., 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) and Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (freedom of religion); Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 629, 69 L.Ed. 1138 (1925) (freedom of speech); Near v. Minn., 283 U.S. 697, 701, 51 S.Ct. 625, 626, 75 L.Ed. 1357 (1931) (freedom of the press); DeJonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937) (freedom of assembly and petition). Since the second amendment right to bear arms has been perceived as primarily a guarantee that the federal government would not interfere with the state militia, it has not been made applicable to the states. U.S. v. Cruikshank, 2 Otto 542, 92 U.S. 542, 553, 23 L.Ed. 588 (1876). The Court has not constitutionally scrutinized the third amendment prohibition against quartering soldiers in private homes. Search and seizure regulations in the fourth amendment have been made applicable to state and local government police practices. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Among the fifth amendment guarantees, only the grand jury clause has not been made applicable to the states. Hurtado v. Calif., 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). The sixth amendment rights in the criminal process have been held applicable to the states in Klopfer v. N.C., 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (speedy trial); In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (public trial and notice); Duncan v. La., 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (jury trial); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (impartial jury); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 923 (1965) (confrontation); Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967) (compulsory process); and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (counsel), as has the eighth amendment prohibition against cruel and unusual punishment. La. ex rel Francis v. Resweber, 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Although the applicant here would have us find differently, the right to jury trial in civil cases provided by the seventh amendment has not been found applicable to the states. The eighth amendment prohibition against excessive bail has been impliedly made applicable to the states in Schlib v. Kuebel, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971), and the ninth amendment has not been the source of specific rulings. Finally, the very terms of the tenth amendment exclude state application. J. Nowak, Constitutional Law 414-15 (1978).
[8] Classifications such as gender and illegitimacy have been categorized as quasi suspect and subjected to a middle tier of scrutiny in the assessment of constitutional considerations. Guidelines for this standard of review were suggested in the United States Supreme Court decision, Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). According to the Reed court, "a classification `must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'" Id. at 76, 92 S.Ct. at 254 (quoting Royster Guano Co. v. Va., 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).