500 So.2d 771 (1987)
Glenda June PARKER
v.
Marshall T. CAPPEL, et al.
No. 86-CD-1494.
Supreme Court of Louisiana.
January 12, 1987.
Concurring Opinion January 23, 1987.
Rehearing Denied February 12, 1987.
*772 Gregory Erwin, Dorwin Vizzier, Daniel E. Broussard, Jr., for appellant.
Chris R. Roy, for appellee.
COLE, Justice.
We are presented with the question of whether or not our state constitution's guarantee of equal protection of the law is violated by the Legislature's decision to exclude sheriff's deputies[1] from state workers' compensation.
The trial court has declared R.S. 23:1034 B unconstitutional. We find the statute bears a rational relationship to a legitimate state interest, or, put another way, suitably furthers an appropriate state interest. We therefore reverse and declare the statute valid under Art. I, § 3.[2]
The statute in question is part of Louisiana's workers' compensation coverage *773 scheme, generally, R.S. 23:1021, et seq. Sheriff's deputies as a class are excluded from coverage under the act, with one exception. Public officials and officers of the state and its political subdivisions are also excluded from coverage. However, 23:1034 C provides any political subdivision may provide workers' compensation coverage for its officials, including sheriff's deputies, if it chooses to use its own funds.[3] Thus, the act treats workers' compensation for sheriff's deputies as follows: Orleans Parish Criminal Sheriff's Deputies are provided coverage; all other sheriff's deputies are excluded from the state's coverage and have workers' compensation only if their respective parish provides it.[4]
John Burton Parker was a deputy in the Rapides Parish Sheriff's Office. He suffered a stroke May 16, 1984 and died four days later. Parker's widow filed a petition, alleging his stroke and death occurred in the course and scope of his employment. The petition initially named only the parish sheriff as a defendant. A later amendment named the State of Louisiana as a defendant. Rapides Parish did not provide its own workers' compensation to its deputies.
The defendants each filed the peremptory exception, raising the objection of no cause of action. They argued plaintiff could obtain no relief against either defendant because R.S. 23:1034 provides no workers' compensation coverage of its own.
The trial court overruled the exceptions, finding R.S. 23:1034 B in violation of Art. I, § 3, Louisiana Constitution, 1974. The court said, in pertinent part:

*774 There exists no rational basis or state interest to justify treating plaintiff's husband any differently from any other sheriff's deputy solely because he chose to live and ultimately die outside of Orleans Parish or a parish in which the Sheriff chose not to provide funds for compensation coverage.
Defendants then appealed directly to this Court.[5]
The State argues it has a legitimate interest in defining the classes who are eligible to receive workers' compensation benefits from the state fund. The state is acting rationally in limiting access to the fund, the argument continues, because the fund must be protected from a heavy demand on claims which might drain the fund and deprive all state workers of compensation coverage.
This Court treated the equal protection analysis in a workers' compensation case in Bazley v. Tortorich, 397 So.2d 475 (La. 1981). It found workers' compensation legislation to be laws which serve economic and social welfare interests of the state.
... [I]n the area of economic and social welfare, a legislature does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. Bazley, supra, at 484. Crier v. Whitecloud, 496 So.2d 305 (La. 1986).
In Bazley, as here, the statute's classification does not disadvantage a suspect class or impinge on a fundamental right, nor does it classify on the basis of birth, age, sex, culture, physical condition or political ideas or affiliations.
Plaintiff argued the political affiliation clause was impinged here because the plaintiff's decedent was affiliated with a political subdivision, i.e., the sheriff's office. We do not agree. Political ideas or affiliations do not refer to an individual's choice of employment or employer, but instead refers to basic rights to freedom of beliefs and freedom of associations, with respect to government. Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 10 (1974).
The Bazley court concluded it should refrain from interfering in legislative decisions in workers' compensation so long as the legislation presented a reasonable basis.
Our federal and state constitutions may impose certain procedural safeguards upon systems of workmen's compensation, but they do not empower this Court to second-guess legislators who are charged with the heavy responsibility of regulating the social obligations that exist between the employee, the employer and the public. Bazley, supra, at 484-485.
This Court has long observed a policy of restraint from interfering with the co-equal legislative branch. We have observed an act of the legislature is presumed to be legal until it is shown to be unconstitutional; we construe statutes to give them effect and purpose. Sherman v. Cabildo Const. Co., 490 So.2d 1386, 1390 (La.1986); State v. Union Tank Car Co., 439 So.2d 377 (La.1983); Johnson v. Sewerage District No. 2 of Parish of Caddo, 239 La. 840, 120 So.2d 262 (1960).
In Crier, supra, we recognized our equal protection analysis has been reformulated. Sibley v. Board of Supervisors of Louisiana State University, 477 So.2d 1094 (La.1985). If a law classifies individuals on any basis other than those specifically enumerated in Article I, § 3 of the 1974 Louisiana Constitution, the law will be upheld unless a member of the disadvantaged class shows the law does not suitably further any appropriate state interest.
*775 The State argues the exclusion of sheriff's deputies in Rapides Parish is a suitable means to further an appropriate state interest. Sheriff's deputies are charged with a wide range of law enforcement duties and as such are exposed to many hazards. It is argued the likelihood of claims arising from their duties is very high and the expense of meeting such claims will be so burdensome the state workers' compensation fund will be unable to meet the demand of other state workers. The state, it is contended, has an interest in preserving its economic ability to meet the workers' compensation needs of its employees.
Further, the State argues, the statute does not exclude sheriff's deputies from workers' compensation provided by the respective parishes.
This Court has not previously considered a challenge to this statute on the grounds presented here. Nonetheless, we have concluded recently the classification of plaintiffs injured by governmental tortfeasors is related to the achievement of a legitimate State interest. Rudolph v. Massachusetts Bay Ins. Co., 472 So.2d 901 (La.1985). In Rudolph, we held LSA-R.S. 13:5105 is constitutional, reversing a trial court's ruling to the contrary. The statute prohibits a jury from deciding liability against the state, a state agency or a political subdivision. Trial judges are the fact-finders when the state or one of its subdivisions is a party defendant. The Court said:
We conclude that the Legislature could have rationally believed that this classification of tort victims, who cannot require a jury trial, is related to achieving the legitimate state objectives of the protection of the state treasury and the facilitation of the judicial process. Rudolph, supra, at 905.
Challenges to the denial of workers' compensation benefits to some individuals or classes are not new to the courts. Our intermediate courts have consistently held denial of compensation benefits can be an appropriate state interest.
In Sessions v. Stan Weber and Associates, Inc., 491 So.2d 54 (La.App. 1st Cir. 1986), LSA-R.S. 23:1047 was challenged.
The Court said:
The exclusion of real estate brokers or salesmen is an economic or social decision by the legislature, and we are of the opinion that it does not exceed the bounds of reasonableness. (at p. 55)
LSA-R.S. 23:1231 provides death benefits are paid for injury causing a death which occurs within two years after the accident. Desselle v. Liberty Mutual Insurance Co., 482 So.2d 1009 (La.App.3d Cir.1986), denied benefits to a widow where the worker's death occurred more than two years after the injury. The court said the trade-off between tort and workers' compensation claims reasonably and rationally supports the classification which La.R.S. 23:1231 creates.
In Coker v. State, Depart. of Elect. & Registration, 469 So.2d 451 (La.App.3d Cir. 1985), an election commissioner was held to be a public official under R.S. 42:1 and R.S. 23:1034 B. The commissioner was thus barred from compensation under the state act.
A constitutional challenge to the workers' compensation scheme was mounted in Vita v. United General Insurance Company, 469 So.2d 433 (La.App.3d Cir.1985), writs denied, 478 So.2d 900 (La.1985). A child who did not live with the deceased worker at the time of his death was required to prove his dependency on the deceased worker. The court said the guarantee of equal protection was not violated by distinguishing between children not living with the deceased and children living with the deceased. The latter were not required to prove dependency.
Like the election commissioner in Coker, supra, sheriff's deputies are now defined by the legislature as public officials and officers of their political subdivision. The legislature has repeatedly acted to place sheriff's deputies outside any classification as state employees.
*776 In Kahl v. Baudoin, 449 So.2d 1334 (La.1984), this Court held the state is a co-employer of sheriff's deputies by reasons of its provision of supplemental pay to deputies. Subsequently, the legislature enacted paragraph D of 23:1034, which addresses the conclusion in Kahl that providing supplemental pay makes the state a co-employer. We conclude Kahl has been legislatively overruled. Paragraph D reads in pertinent part:
The fact that the state may grant to an employee of a political subdivision any additional or supplemental pay or otherwise provide funds for the payment of such employee's salary shall not make such employee, in whole or in part or in any way, an employee of the state.
Paragraphs B and C of 23:1034 were similarly enacted to, apparently, override jurisprudence which sought to bring sheriff's deputies into the state workers' compensation scheme. Phillips v. State, Through Dept. of Transportation, 400 So.2d 1091 (La.App. 1st Cir.1981), held 23:1034, as then constituted, included sheriff's deputies in state workers' compensation coverage. In the next legislative session, Paragraphs B and C of 23:1034 were added and defined sheriff's deputies as public officials and officers of their respective political subdivision, thereby exempting them from state coverage, and gave the political subdivisions the discretion to provide compensation coverage for both its officials and employees if the subdivision chose to use its own funds.
In Bazley and subsequent cases, we have observed that the legislature's decisions on economic and social welfare and the preservation of the state's fiscal resources, are decisions within the discretion of the legislative branch. While we might find the law(s) imperfect, we will not interfere with the legislative decisions, absent a clear violation of the state or federal constitutions. We have chosen to strike down legislative enactments only when the constitutional infirmity is compelling. See, e.g., Cross v. Alexander, et al., 498 So.2d 740 (La.1986).
The legislature's definition of sheriff's deputies as public officials and its exclusion of deputies from workers' compensation, while municipal policemen are included, has been the subject of scholarly criticism. Louisiana Civil Law Treatise, Vol. 13, Workers' Compensation Law and Practice, Malone and Johnson, § 98 (West, 1986); Note: The Deputy Sheriff  Public Officer or Public Employee?, 44 La.L.Rev. 1075 (1984). The Malone & Johnson treatise says the classification of deputies as public officials is "spurious" and comments the deputies should never have been excluded.
While we might agree sheriff's deputies sorely need the protection workers' compensation provides, we are loathe to rewrite the legislation judicially. We leave the Legislature to address the criticism. Absent that response, the parishes may provide their own workers' compensation to sheriff's deputies, whose salaries probably ill-afford coverage for work-related injuries.
The trial judge criticized R.S. 23:1034 for providing workers' compensation only if the deputies worked in Orleans Parish. We have already noted the Orleans Parish Criminal Sheriff's Office is charged with different duties than other sheriff's offices. See Fn. 4. There are other differences.
Orleans Parish Civil Sheriff's Office derives its income from parish revenues, licenses and state taxes, while the Criminal Sheriff's Office is funded by the City of New Orleans. Other sheriff's offices obtain funds by acting as tax collectors for the parish. Thus, parish revenues pay for the sheriff's office and the offices (except for Orleans) provide a full array of law enforcement functions. Orleans is the only parish with a division of civil and criminal sheriffs. The 1974 Louisiana Constitution provided for a continuation of the offices. Art. 5, § 32.
The State argues there are unique geographical, historical and population differences between Orleans and other parishes, and these differences justify exceptions in certain statutes. We agree and hold the *777 act's coverage of Orleans Parish Criminal Sheriff's deputies is rational, recognizing the differences in functions and funding between that office and other sheriff's offices. The trial court's finding of unconstitutionality failed to recognize these differences and failed to find the legislative scheme suitably furthers the appropriate state interest of providing a workers' compensation coverage which is not drained by a class with heavy demands upon the state's funds for such coverage.
The trial court struck down R.S. 23:1034 B as violative of the equal protection clause of our Constitution. Defendants' one assigned error addressed only that single holding. Plaintiff, however, argues the legislation is also a denial of substantive due process provided for by Art. 1, § 2 of the Constitution. We do not find merit in plaintiff's contention there is a deprivation of life, liberty, or property. Nor do we find the question of whether or not the State of Louisiana is a co-employer of deputy sheriffs to have any relevancy, considering the explicit language of the legislation which otherwise passes constitutional muster.

CONCLUSION
For the reasons given above, we reverse the decision of the trial court. We find R.S. 23:1034 B is not a violation of equal protection nor substantive due process under the 1974 Louisiana Constitution.
Accordingly, the peremptory exceptions raising the objection of no cause of action are maintained and plaintiff's action is dismissed.
REVERSED AND RENDERED.
DIXON, C.J., concurs.
DENNIS, J., concurs with reasons.
WATSON, J., dissents and assigns reasons.
LEMMON, J., dissents and will assign reasons.
DENNIS, Justice, concurring.
The discussion in dicta of the various court of appeal decisions involving other types of legislative classifications is obviously not part of the ratio decidendi of this decision, nor intended to have precedential value. Therefore, approval of the court of appeal decisions should not be inferred from the majority opinion.
WATSON, Justice, dissenting.
With respect, I dissent for the reasons assigned by the trial judge, Honorable William P. Polk.
NOTES
[1] LSA-R.S. 23:1034 B has one exception to the general exclusion of sheriff's deputies. Orleans Parish Criminal Sheriff's Deputies are included in the state workers' compensation coverage scheme.
[2] Louisiana's equal protection guarantee provides: "No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime."
[3] LSA-R.S. 23:1034 in its entirety provides:

§ 1034. Public Employees; exclusiveness of remedies
A. The provisions of this Chapter shall apply to every person in the service of the state or a political subdivision thereof, or of any incorporated public board or commission authorized to hold property and to sue and be sued, under any appointment or contract of hire, express or implied, oral or written, except an official of the state or a political subdivision thereof or of any such incorporated public board or commission; and for such employee and employer the payment of compensation according to and under the terms, conditions, and provisions set out in this Chapter shall be exclusive, compulsory, and obligatory; provided that one employed by a contractor who has contracted with the state or other political subdivision, or incorporated public board or commission through its proper representative, shall not be considered an employee of the state, or other political subdivision, or incorporated public board or commission; further, provided that members of the police department, or municipal employees performing police services for any municipality who are not elected officials shall be covered by this Chapter and shall be eligible for compensation; and provided further that criminal deputy sheriffs for the parish of Orleans shall be covered by this Chapter and shall be eligible for compensation as provided herein.
B. Except as expressly and specifically provided to the contrary in Subsection A hereof, the officials excepted from coverage under the provisions of this Chapter, in Subsection A of this Section, include all public officers as defined by R.S. 42:1. In this regard, sheriffs' deputies are, under R.S. 42:1, 33:1433, and 33:9001 et seq., appointed public officers and officials of their respective political subdivisions, the parish law enforcement districts.
C. Notwithstanding the provisions of Subsection A hereof, any political subdivision may, in its own discretion and by using its own funds available for same, provide worker's compensation coverage for its officials, in addition to having to provide such coverage for its employees.
D. Employees of the state, but not those of political subdivisions, shall be provided compensation under this Section by the office of risk management of the Division of Administration in accordance with R.S. 39:1527, et seq. For purposes of this Section, "employees of the state" means the employees of "state agencies" as defined by R.S. 39:1527(1). Employees of political subdivisions shall be provided compensation under this Section by the governing authorities of their respective political subdivision. The fact that the state may grant to an employee of a political subdivision any additional or supplemental pay or otherwise provide funds for the payment of such employee's salary shall not make such employee, in whole or in part or in any way, an employee of the state.
[4] Unlike other sheriff's offices, the Orleans Parish Criminal Sheriff is responsible only for the custodial function of the parish prison. The boundaries of the parish and the City of New Orleans are the same and other law enforcement functions are left to the City of New Orleans Police Department. All of the operating funds for the Orleans Criminal Sheriff are derived from the municipality. The Orleans Parish Civil Sheriff's Office is not included in the state's workers' compensation scheme.
[5] Art. 5, § 5(D), La. Constitution 1974, provides: "In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional...."